IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-50531

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL MACHUCA-BARRERA, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

August 2, 2001

Before HIGGINBOTHAM, DAVIS, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Border Patrol agents at an immigration checkpoint discovered a large stash of marijuana in a car driven by defendant Miguel Machuca-Barrera. Machuca-Barrera was convicted of possession with intent to distribute marijuana. We hold that because the brief stop by the Border Patrol lasted no longer than necessary to fulfill its immigration-related purpose, the stop did not violate the Fourth Amendment. Further, because the prosecutor's closing argument did not go beyond reasonable inferences that could have been drawn from the record, the prosecutor's statements did not deprive Machuca-Barrera of a fair trial. We affirm.

On March 21, 1999, two teenage boys driving a Plymouth Laser entered a permanent immigration checkpoint near Marfa, Texas.[1]  It was about 6:45 p.m. on a Sunday afternoon.  Border Patrol Agent Sean Patrick Holt questioned the pair about their travel plans and citizenship.  Miguel Machuca-Barrera, 19, and Aldo Venegas-Muniz, 15, replied that they were U.S. citizens living in Pecos, Texas, and that they were returning from a weekend trip to Ojinaga, Mexico.

At this point, Agent Holt asked them whether they were carrying any firearms or drugs.[2]  Machuca-Barrera replied no.  Agent Holt requested consent to search the car, which Machuca-Barrera gave.  Agent Holt then referred them to the secondary inspection area.  In the secondary inspection area, Agent Holt ordered the boys to exit the car.  Border Patrol Agent Guadalupe Trevino Jr. then led his drug-sniffing dog around the car.  The dog alerted near the trunk of the car.

With some difficulty, the agents were finally able to locate drugs in the car.  The agents removed a large speaker box in the rear of the car.  The box contained two holes, which had been

---

[1] Marfa is a small town in west Texas about 60 miles north of the Mexican border.

[2] There was a factual dispute at the suppression hearing as to when Agent Holt asked Machuca-Barrera and Venegas-Muniz about drugs.  We recite the version testified to by Machuca-Barrera.  Although the district court did not make a finding on this factual issue, it assumed for purposes of resolving the motion to suppress that Machuca-Barrera's account was accurate.

covered by pieces of wood.  Inside the box were over 43 pounds of marijuana.

Machuca-Barrera was indicted for possession with intent to distribute marijuana.[3]  Before trial, he moved to suppress the drugs found, making essentially the same arguments now presented to this court.  The district court denied the motion.

At trial, Machuca-Barrera testified that he knew nothing of the drugs in the car.  He testified that he had gone with Venegas-Muniz to Ojinaga to party, because they could get alcohol more easily in Mexico.  While in Ojinaga, however, the car was out of his control several times: when he got a flat tire repaired, when he got the speakers repaired, and when Venegas-Muniz borrowed it.[4]

He also explained the condition of the speaker box.  This testimony was corroborated by his cousin Andres Machuca, who testified that he and Machuca-Barrera had installed the speaker box in the car, but their speaker system was designed to be sealed.  Since the only correct-size box available had holes in it, they covered the holes to make the speakers sound better.

In his closing argument, the prosecutor attacked the credibility of Andres Machuca:

> Andres admitted . . . that he hadn't told anybody his story about the speaker box before today.  Now, don't you think that if your cousin . . . was in a bind that this Defendant is in

---

[3] Venegas-Muniz was not prosecuted because he was a minor.

[4] Prior to Machuca-Barrera's trial, Venegas-Muniz was again arrested on drug smuggling charges.

you would have brought that up before the day of trial?  You wouldn't have made it up after you heard what was testified to in the courtroom about the wooden blocks and come in here and sold it as truth—

At this point defense counsel objected, stating, "There's no evidence that he made it up after he heard."  The district court overruled the objection.

Machuca-Barrera was found guilty by the jury, and sentenced to 30 months for the drug possession charge.  He appeals.

II

Machuca-Barrera's primary argument is that Agent Holt's inquiry about drugs violated the Fourth Amendment because it was not based on reasonable suspicion.

A

In *United States v. Martinez-Fuerte*[5] the Supreme Court upheld the constitutionality of immigration checkpoints at which INS agents would stop travelers without suspicion for questioning about immigration status.  The Court held that suspicionless "stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment."[6]  It explicitly limited its holding to stops and questioning to enforce the immigration laws;

---

[5] 428 U.S. 543 (1976).

[6] *Id*. at 566.  It also stated that referrals to secondary need not be justified by individualized suspicion and may be based on factors, such as ethnicity, that would generally be deemed impermissible.  *See id.* at 563-64.

searches or "further detention . . . must be based on consent or probable cause."[7]  Thus, the Supreme Court created a narrow exception to the general requirements of reasonable suspicion and probable cause.[8]

The Supreme Court was recently faced with suspicionless stops at checkpoints created to interdict drugs.  *City of Indianapolis v. Edmond*[9] held such checkpoints unconstitutional.[10]  The Court stated that the validity of suspicionless stops at a checkpoint depends on the "programmatic purpose" of the checkpoint.[11]  It pronounced, "We have never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing."[12]  The government's interest in intercepting illegal drugs, the Court held, was indistinguishable from the government's interest in "ordinary crime control."[13]  The special "problems of policing the

---

[7] *Id.* at 567.

[8] In the 25 years since *Martinez-Fuerte*, the Supreme Court has upheld suspicionless stops at checkpoints on only one occasion.  In *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 455 (1990), the Supreme Court upheld the use of checkpoints to look for drunk drivers.  The Court has elsewhere suggested in dicta that checkpoints to inspect driver's licences and vehicle registration might be constitutional.  *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

[9] 531 U.S. 32 (2000).

[10] *See id.* at 47-48.

[11] *See id.* at 46.

[12] *Id.* at 41.

[13] *Id.* at 44.

border" for illegal immigrants distinguished the checkpoints approved in *Martinez-Fuerte*.[14]

In short, checkpoints with the primary purpose of identifying illegal immigrants are constitutional, and checkpoints with the primary purpose of interdicting illegal drugs are not. As we now explain, this distinction is crucial to determining the lawful scope and duration of detentions at immigration checkpoints.[15] The Supreme Court has not explained the constitutional boundaries of individual stops at immigration checkpoints, however. We thus turn to the law on the constitutional scope and duration of stops based on reasonable suspicion for guidance.

B

In reviewing stops based on reasonable suspicion, the Supreme Court and this court have long held that the justifying purpose of a stop constrains its lawful extent. As we have stated, "[t]he

---

[14] *Id.* at 41. Thus, the Court struck down the use of checkpoints whose primary purpose was drug interdiction, but emphasized that its holding in *Martinez-Fuerte* was not affected. *See id.* at 47.

[15] We note that the checkpoint at Marfa is an immigration checkpoint, rather than a border checkpoint. *See United States v. Jackson*, 825 F.2d 853, 860 (5th Cir. 1987) (en banc) (holding that a checkpoint is the functional equivalent of the border only when the government has proven to a "reasonable certainty that the traffic passing through the checkpoint is international in character"; a border checkpoint stops "no more than a negligible number of domestic travelers.") (internal quotation marks omitted). The government does not argue that the Marfa checkpoint is a border checkpoint. Therefore, this case does not implicate the broad powers of the federal government to conduct searches and seizures of persons for immigration, drug interdiction, or other purposes at the border or its functional equivalent. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537-38, 541-42 (1985); *United States v. Ramsey*, 431 U.S. 606, 616 (1977).

6

Constitution [is] violated [ ] when the detention extend[s] beyond the valid reason for the initial stop."[16]  For example, in the typical case of an automobile stop, a seizure is unjustified in the absence of reasonable suspicion of unlawful activity.  Thus, when an officer stops a person based on reasonable suspicion of some crime, the officer may detain that person for only long enough to investigate that crime.  Once the purpose justifying the stop has been served, the detained person must be free to leave.[17]

To determine the lawfulness of a stop, we ask whether the seizure exceeded its permissible duration.  We look to the scope of the stop in order to determine its permissible duration.[18]  The permissible duration of the stop is limited to the time reasonably necessary to complete a brief investigation of the matter within the scope of the stop.[19] The scope of a stop is limited to investigation of matters justifying the stop.

---

[16] *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999), *revised on other grounds on denial of rehearing*, 203 F.3d 883 (5th Cir. 2000); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983) ("an investigatory detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993) ("We recognize that a detention may be of excessively long duration even though the officers have not completed and continue to pursue investigation of the matters justifying [the stop].").

[17] *See United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000); *Dortch*, 199 F.3d at 196.

[18] *See Dortch*, 199 F.3d at 199 (refusing to "endorse police seizures that are not limited to the scope of the officers' reasonable suspicion and that extend beyond a reasonable duration.").

[19] Our decisions have held that police violated the Fourth Amendment by extending a stop by even three or five minutes beyond its justified duration. *See Jones*, 234 F.3d at 241 (three minutes); *Dortch*, 199 F.3d at 196 (approximately five minutes).

An officer may ask questions outside the scope of the stop, but only so long as such questions do not extend the duration of the stop. It is the length of the detention, not the questions asked, that makes a specific stop unreasonable:[20] the Fourth Amendment prohibits only unreasonable seizures, not unreasonable questions, and law enforcement officers are always free to question individuals if in doing so the questions do not effect a seizure.[21]

C

The Fourth Amendment's requirement that stops be reasonable applies equally to a checkpoint. Because stops at an immigration checkpoint need not be justified by reasonable suspicion, however, we do not ask the stopping officer to articulate a justification for the stop. Instead, the justification for an immigration checkpoint stop comes from its programmatic purpose. *Edmond* stands

---

[20] As we note below, in the checkpoint context, a stop would also be unreasonable if the programmatic purpose of the checkpoint's operation is invalid.

[21] As we explained in *United States v. Shabazz*, 993 F.3d 431 (5th Cir. 1993), detention, not questioning, implicates the Fourth Amendment; thus, questioning can only run afoul of the Fourth Amendment if the detention is affected. *See id.* at 436-37. In *Shabazz*, an officer conducting a traffic stop asked a motorist questions about contraband while waiting for the results of a computer check of the motorist's license and registration. *See id.* at 437. Since the detention of the motorist was justified until the results of the check were returned to the officer, we concluded that the questions did not violate the Fourth Amendment because they did not extend the stop. *See id.* We recognized, however, that questioning unrelated to the justification for the stop that extends the duration of the stop violates the Fourth Amendment. *See id.* at 437. Likewise, while a drug-dog sniff is not a search, *see Edmond*, 531 U.S. at 40, it is beyond the justifying scope of an immigration stop. Thus, border patrol agents may only conduct a drug-dog sniff if it does not lengthen the stop or if they obtain consent.

8

for the principle that it is a legitimate, programmatic purpose that justifies a checkpoint stop made without any suspicion.

We have already noted that the permissible duration of the stop is limited to the time reasonably necessary to complete a brief investigation of the matter within the scope of the stop. The scope of an immigration checkpoint stop is limited to the justifying, programmatic purpose of the stop: determining the citizenship status of persons passing through the checkpoint.[22] The permissible duration of an immigration checkpoint stop is therefore the time reasonably necessary to determine the citizenship status of the persons stopped.[23] This would include the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention.

The permissible duration of an immigration checkpoint stop is therefore brief. Indeed, the brevity of a valid immigration stop was a principal rationale for the Supreme Court's conclusion in *Martinez-Fuerte* that immigration checkpoints are constitutional: "The stop does intrude to a limited extent on motorists' right to free passage without interruption . . . [b]ut it involves only a

---

[22] *See id.*

[23] "[I]n every one of its many checkpoint and roving patrol cases, the Supreme Court has restricted the level of government intrusion to brief detentions only long enough to ask questions and check citizenship status. . . . The Court has thus demarcated the boundary of privacy that officials at checkpoints cannot intrude without reason." *United States v. Jackson*, 825 F.2d 853, 862 (5th Cir. 1987) (en banc); *see also United States v. Pierre*, 958 F.2d 1304, 1308-09 (5th Cir. 1992) (en banc).

brief detention of travelers during which [a]ll that is required of the vehicle's occupants is a response to a brief question or two and possibly the production of a document evidencing a right to be in the United States."[24]

Within this brief window of time in which a Border Patrol agent may conduct a checkpoint stop, however, we will not scrutinize the particular questions a Border Patrol agent chooses to ask as long as in sum they generally relate to determining citizenship status.[25] Law enforcement officers must have leeway in formulating questions to determine citizenship status. We decline a protocol that measures the pertinence of questions to the immigration purpose by an after-the-fact standard for admissibility at trial. So long as a checkpoint is validly created, policing the duration of the stop is the most practical enforcing discipline of purpose. The key is the rule that a stop may not exceed its permissible duration unless the officer has reasonable suspicion. We deploy a test that is both workable and which reinforces our resistance to parsing the relevance of particular questions. To scrutinize too closely a set of questions asked by a Border Patrol agent would engage judges in an enterprise for which they are ill-

---

[24] 428 U.S. at 557-58 (internal quotation marks omitted).

[25] Unlike in contexts where a stop is based on reasonable suspicion, where a court can judge the relevance of questions against the specific rationale justifying the stop, a checkpoint stop is made without individualized suspicion and therefore justified only by more general, programmatic purpose.

equipped and would court inquiry into the subjective purpose of the officer asking the questions.[26]

Of course, a Border Patrol agent may extend a stop based upon sufficient individualized suspicion. For extended detentions or for searches, *Martinez-Fuerte* requires consent or probable cause.[27] Also, if the initial, routine questioning generates reasonable suspicion of other criminal activity, the stop may be lengthened to accommodate its new justification.[28] Thus, an agent at an immigration stop may investigate non-immigration matters beyond the permissible length of the immigration stop if and only if the initial, lawful stop creates reasonable suspicion warranting further investigation.[29]

---

[26] We do not inquire into the motives of individual Border Patrol agents in performing stops. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Instead, we determine whether the stop objectively conforms to the limitations placed on the stop by its justifying purpose. *See id.* (noting that an officer's state of mind "does not invalidate [an] action taken as long as the circumstances, viewed objectively, justify that action.") (quoting *United States v. Robinson*, 414 U.S. 218, 136 (1973)).

[27] *See* 428 U.S. at 567.

[28] As the *Edmond* court noted, "police officers [may] act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful primary purpose, even when such action may result in the arrest of a motorist for an offense unrelated to that purpose." 531 U.S. at 48.

[29] The government points to cases from this court that have upheld stops and searches for drugs at immigration checkpoints. Machuca-Barrera points out that in virtually all of those cases, we noted that the agents at the checkpoints had reasonable suspicion or probable cause. The exception is *United States v. Hernandez*, 976 F.2d 929 (5th Cir. 1992) (per curiam), which stated in passing that "[a]gents [during suspicionless immigration stops] may also make referrals to conduct inquiries about controlled substances." *Id.* at 930. This case has little relevance, however. *Hernandez* only speaks to the reason for the referral to secondary, not the length of the stop. Thus, while a border patrol agent may refer a car to secondary for any reason (or no reason at all), *see Jackson*, 825 F.2d at 862, the length of the detention is still limited by the immigration-related justification for the stop, *see id.* To the extent that this dictum

11

In this case, it is not disputed that the primary purpose of the Marfa checkpoint is to investigate immigration status.[30] Thus, we face only the question of whether the suspicionless stop of Machuca-Barrera was sufficiently limited in duration to pass constitutional muster.[31] We note initially that our inquiry considers only Agent Holt's questioning of Machuca-Barrera up to the point at which Machuca-Barrera consented to a search of his

---

stands for more than this, it is inconsistent with *Edmond* and our en banc holding in *Jackson*, to which we are bound.

[30] Of course, a stop made without reasonable suspicion at a checkpoint with an invalid programmatic purpose would be unconstitutional. *See Edmond*, 531 U.S. at 47-48.

[31] We note that Agent Holt did not have reasonable suspicion of any criminal activity during his questioning of Machuca-Barrera at primary.

car.[32]   After Machuca-Barrera consented to a search, Agent Holt needed no justification to prolong the encounter.[33]

The justified scope of the stop was immigration-related questions.  Therefore, the permissible duration of the stop was the amount of time reasonably necessary for Agent Holt to ask a few questions about immigration status.  Agent Holt's few questions took no more than a couple of minutes; this is within the permissible duration of an immigration checkpoint stop.  Although Machuca-Barrera notes that Agent Holt asked a question about drugs, we will not second-guess Agent Holt's judgment in asking that question.  The brief stop by Agent Holt, which determined the citizenship status of the travelers and lasted no more than a

---

[32] If Machuca-Barrera had not consented to the requested search, Agent Holt would not have been able to extend the stop beyond its permissible duration.  The mere fact that a person refuses to consent to search cannot be used as evidence in support of reasonable suspicion.  *See United States v. Hunnicutt*, 135 F.3d 1345, 1350-51 (10th Cir. 1998) (noting that it "would make a mockery of the reasonable suspicion and probable cause requirements . . . if citizens' insistence that searches and seizures be conducted in conformity with constitutional norms could create the suspicion or cause that renders their consent unnecessary"); *Karnes v. Skrutski*, 62 F.3d 485, 495 (3d Cir. 1995) (holding that refusal to consent to search "cannot support a finding of reasonable suspicion"); *see also United States v. Moreno*, 233 F.3d 937, 941 (7th Cir. 2000) (collecting related cases).  Nonetheless, Agent Holt would still have had discretion to refer Machuca-Barrera to secondary.  *See Martinez-Fuerte*, 428 U.S. at 563-64.  However, in the absence of reasonable suspicion, probable cause, or consent, a referral to secondary does not increase the permissible length of the stop, except perhaps to the extent that relocating the car to secondary consumes time.  *See United States v. Rascon-Ortiz*, 994 F.2d 749, 753 (10th Cir. 1993) ("Whether the routine checkpoint stop is conducted at primary, secondary, or both is irrelevant to Fourth Amendment concerns.").  The constitutionality of a seizure at a checkpoint stop depends on its duration, not its location.

[33] A search based on valid consent need not be supported by probable cause. *See United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993).  Because we find no Fourth Amendment violation, we need not address Machuca-Barrera's claim that his consent was invalidated by a constitutional violation.

13

couple of minutes before Agent Holt requested and received consent to search, was constitutional.

                              III

Machuca-Barrera challenges the prosecutor's arguments insinuating that Andres Machuca made up his corroborating testimony after hearing trial testimony, saying that they had no basis in the evidence. In fact, Machuca-Barrera argues, the record reflects that Andres was not in the courtroom when other witnesses testified.[34] As a consequence, he concludes, the prosecutor unfairly influenced the jury and deprived him of a right to a fair trial.

In reviewing a claim of prosecutorial misconduct in arguing to the jury, we decide whether the remarks were improper and, if so, evaluate whether the remarks affected the substantial rights of the defendant.[35] If they did not, the error is harmless and does not justify reversal.[36]

A prosecutor may argue "those inferences and conclusions he wishes [the jury] to draw from the evidence so long as those

---

[34] The district court granted defense counsel's motion to sequester the witnesses.

[35] *See United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999); *United States v. Munoz*, 150 F.3d 401, 414-15 (5th Cir. 1998).

[36] *See Munoz*, 150 F.3d at 415; *United States v. Vaccaro*, 115 F.3d 1211, 1215 (5th Cir. 1997).

14

inferences are grounded upon the evidence."[37]  But "a prosecutor's closing argument cannot roam beyond the evidence presented during trial."[38]  In assessing the prosecutor's statements in this case, "it is necessary to look at them in context."[39]

It is true that the specific fact of Andres Machuca being in the courtroom is not in the record.  In context, however, the prosecutor's suggestions that the witness's testimony was recently fabricated were grounded in the record and represented an argument about reasonable inferences that the prosecutor invited the jury to draw.  Given that the witness had not told his story prior to trial, a reasonable juror could infer that if his story were true, he would have offered it sooner to help Machuca-Barrera.  The assertion that Andres Machuca could not have heard Machuca-Barrera's testimony in the courtroom does not contradict the substance of the prosecutor's argument; the jury need only infer that Andres Machuca had heard at some point "what was testified to in the courtroom about the wooden blocks."  Consequently, the district court did not err in overruling Machuca-Barrera's objection to the prosecutor's comment.

---

[37] *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995).

[38] *Gallardo-Trapero*, 185 F.3d at 320; *see also United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989) ("A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial.").

[39] *Gallardo-Trapero*, 185 F.3d at 320.

IV

The judgment of the district court is AFFIRMED.