**UNITED STATES of America**

v.

**David Allen LONG, Defendant.**

**No. EP–01–CR–1997F.**

United States District Court, W.D Texas, El Paso Division.

April 19, 2002.

Stanley M. Serwatka, Assistant U.S. Attorney, El Paso, TX, for the government.

Christine W. Kelso, Assistant Federal Public Defender, El Paso, TX, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

FURGESON, District Judge.

After stopping at the Desert Haven checkpoint, Defendant David Allen Long was arrested and charged with possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). While questioning Defendant about his citizenship status, a Border Patrol agent became suspicious of Defendant's nervous demeanor and dubious responses. Defendant was referred to secondary where he consented to the search of the vehicle's trunk. After a positive canine alert, the agents discovered 203.82 pounds of marijuana inside Defendant's luggage. Before the Court is Defendant's Motion to Suppress, filed January 3, 2002, in the above-captioned matter.

The novel issue presented in this case is whether the immigration-related purpose of a checkpoint stop ceases the moment a Border Patrol agent forms a subjective belief that a motorist is a citizen of the United States. Defendant asserts that any questioning conducted after an agent is satisfied of U.S. citizenship violates the Fourth Amendment, unless there is reasonable suspicion of criminal activity. After careful consideration, the Court holds that as long as an inspection objectively relates to the immigration purpose of the stop, an agent's personal satisfaction that a traveler is legally present is irrelevant in determining whether the stop was constitutional. Because neither the detention of Defendant at the Desert Haven checkpoint nor the search of his trunk violated the Fourth Amendment, Defendant's Motion should be DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2001, Defendant was traveling east on Highway 62/180 and en-

tered the primary inspection lane at the United States Border Patrol checkpoint outside of Desert Haven, Texas. Border Patrol Agent George Fernandez, who was manning the primary inspection lane, noticed that the windows of Defendant's car were down and that the car's fan was on the maximum setting and blowing hot air from the vents. The temperature of the air blowing from the vents seemed strange to Agent Fernandez because it was a warm day.[1]

Agent Fernandez asked Defendant if he was a citizen of the United States, and Defendant replied affirmatively. He appeared nervous to the Agent and seemed to gulp or swallow before responding to the question. Agent Fernandez then asked Defendant about his travel plans. Defendant stated that he was traveling to Austin from El Paso, which struck Agent Fernandez as odd because the most common and direct route to this destination originates on Interstate 10, not Highway 62/180. Upon further inquiry, Defendant explained that he had spent the night in El Paso on his way back from conducting business in Phoenix. Agent Fernandez questioned Defendant about the nature of his business and Defendant responded that he worked with insurance claims. When asked the name of his employer, Defendant paused and had a blank expression. He got out a business card and, with shaking hands, gave it to Agent Fernandez. The card was from a business in Odessa, Texas but did not contain any information linking Defendant to the business. The questioning in the primary inspection lane lasted between one and two minutes, and then Agent Fernandez referred Defendant to the secondary inspection area.

When moving his car, Defendant drove beyond the secondary inspection area and

the agents had to tell him to back up. Agent Martinez took over the inspection and questioned Defendant about the contents of his trunk. Defendant consented to Agent Martinez's request to search the trunk.

Inside the trunk, Agents Fernandez and Martinez saw six soft-sided pieces of luggage. The bags were arranged neatly, a characteristic the Agents knew to be consistent with narcotics trafficking. Agent Martinez removed two of the pieces of luggage from the trunk. One of the bags was slightly open, and he saw that there was plastic wrapping inside of it, which the Agents also knew to be a sign of narcotics trafficking.

At this point, Defendant was patted down for officer safety. During the patdown, Defendant offered to give the Agents two thousand dollars each, the "dope," and the car if they agreed to let Defendant go free. Defendant explained that this offer was not a bribe, but rather a "donation." Throughout the time that Agent Martinez was inspecting the trunk, Agent Fernandez noticed that Defendant appeared nervous and was fidgeting and pacing.

Agent Martinez placed the bags back in the trunk and waited for the arrival of a canine to perform a sniff test. When the dog arrived, it alerted to the trunk. The Agents discovered 203.82 pounds of marijuana inside five of the bags.

Defendant moved to suppress the contraband seized from his vehicle and the statements he made to the Border Patrol Agents and, on January 5, 2002, the Government filed its response. The Court held a hearing on the Motion on January 29, 2002. Defendant filed his First

---

1. Defense witness Juan Guerrero offered climatological evidence that the high temperature on October 25, 2001 was 81 degrees Fahrenheit and the low temperature was 48 degrees Fahrenheit.

Amended Supplemental Brief on Suppression Issues ("Supplemental Brief") on February 5, 2002, and the Government responded on February 19, 2002. Finally, on March 11, 2002, Defendant filed a letter in support of the arguments in its Motion and Supplemental Brief.

## DISCUSSION

### a. The Initial Encounter

Defendant first argues that Agent Fernandez conducted an illegal search by sticking his head and hand into the open window of the car. Defendant asserts that the Agent could not have felt the air blowing from vents in the dashboard without putting his hand inside the car. Because it appears that neither the head nor hand of Agent Fernandez entered the car, no search occurred during his initial interaction with Defendant.

It was unclear at the outset of Agent Fernandez's testimony whether he had stuck his head inside the vehicle. However, on cross-examination, when asked if he "put anything other than [his] hand into the vehicle," he responded that he did not.[2] The Court considers the Agent to be a highly credible witness and accepts this testimony.

With regard to the Agent's hand, the Court also finds that it did not enter the car. During both direct and cross examination, Agent Fernandez testified that he placed his hand on the window, despite defense counsel's repeated questioning to the contrary.[3] In light of this testimony,

the Court concludes that the Agent's hand was on the window frame of the door and not inside the car. Thus, the Agent did not interfere with Defendant's reasonable expectation of privacy.

### b. Questioning at the Primary Inspection Area

In *United States v. Martinez–Fuerte*,[4] the Supreme Court upheld the making of suspicionless and warrantless stops at immigration checkpoints. The Court recognized that requiring motorists and passengers to stop at immigration checkpoints constitutes a "seizure" within the meaning of the Fourth Amendment.[5] However, it held that Border Patrol agents at fixed checkpoints may effectuate brief stops to verify immigration and citizenship status without violating the Constitution.[6] If the initial, routine questioning generates reasonable suspicion of other criminal activity, an agent may investigate non-immigration matters beyond the permissible length of the immigration stop.[7] Other law enforcement activity, such as searches or extended detention, require consent or probable cause.[8]

In *United States v. Machuca–Barrera*,[9] the Fifth Circuit elaborated upon the constitutional guidelines for immigration checkpoints set out a quarter-century earlier in *Martinez–Fuerte*. The court reiterated the general rule that a detention must last no longer than is necessary to effectuate the purpose of the stop.[10] It then explained that the permissible duration of

2.  Transcript of Suppression Hearing, at 5.

3.  *Id.* at 5, 26–7.

4.  428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

5.  *Martinez–Fuerte*, 428 U.S. at 556, 96 S.Ct. 3074.

6.  *Id.* at 566–67, 96 S.Ct. 3074.

7.  *United States v. Machuca–Barrera*, 261 F.3d 425, 434 (5th Cir.2001).

8.  *Martinez–Fuerte*, 428 U.S. at 567, 96 S.Ct. 3074.

9.  261 F.3d 425.

10. *Id.* at 432 (citations omitted).

the stop depends on its scope, which in turn is "limited to investigation of matters justifying the stop." [11] Thus, the permissible duration of an immigration checkpoint stop is brief and is confined to the time reasonably necessary to determine the citizenship status of those stopped.[12]

Defendant contends that the stop exceeded its permissible duration. Agent Fernandez testified that he was immediately satisfied Defendant was a U.S. citizen when Defendant responded to the citizenship query. Citing *Machuca–Barrera,* Defendant argues that the immigration-related purpose of the stop ended and the questioning should have ceased at that time. Defendant asserts that his continued detention was unconstitutional because the Border Patrol Agents lacked reasonable suspicion to justify lengthening the stop. The Court disagrees.

"Beyond the clear statement that immigration stops must be brief, *Machuca–Barrera* does not delineate a specific time limit for such stops; nor does the case stand for the proposition that the stops must occur as fast as humanly possible." [13] The Fifth Circuit has established that the permissible duration of immigration checkpoint stops includes the time necessary to (1) ascertain the number and identity of the occupants of the vehicle, (2) inquire about citizenship status, (3) request identification or other proof of citizenship, and (4) request consent to extend the detention.[14] Within the brief window of time in which an agent may conduct a checkpoint stop, however, courts do not scrutinize the particular questions an agent chooses to ask as long as "they generally relate to determining citizenship status." [15]

■ Here, Agent Fernandez's brief questioning of Defendant was appropriate with regard to both its length and content. He questioned Defendant about: (1) his citizenship, (2) where he was traveling from and to, and (3) his occupation. These questions took between one and two minutes, which is within the permissible duration of an immigration checkpoint stop.[16] Although Agent Fernandez questioned Defendant about his occupation, which may seem unrelated to residency or citizenship status, the Court will not second-guess the Agent's judgment in asking it.[17]

Because Agent Fernandez's questions objectively related to the immigration purpose of the stop, his personal satisfaction that Defendant was a U.S. citizen is irrelevant in determining whether the detention met constitutional requirements.[18] Holding otherwise would lead to a rule requiring immigration checkpoint stops to end immediately upon the formation of a belief that a traveler is legally in the United States; however, such a rule would be both ineffective and impractical. Agent Fernandez testified that, during his tenure as a Border Patrol agent, there were times when his personal belief that someone was a U.S. citizen was later proven wrong.[19] Thus, forcing agents to rely on hastily-

---

11. *Id.*

12. *Id.* at 433.

13. *United States v. Waldron,* 178 F.Supp.2d 738, 744 (W.D.Tex.2002).

14. *Machuca–Barrera,* 261 F.3d at 433.

15. *Id.* at 433–34.

16. *Id.* at 435.

17. *Waldron,* 178 F.Supp2d at 744 (citing *Machuca–Barrera,* 261 F.3d at 433–34).

18. *Machuca–Barrera,* 261 F.3d at 434 n. 26 ("We do not inquire into the motives of individual Border Patrol agents in performing stops.... Instead, we determine whether the stop objectively conforms to the limitations placed on the stop by its justifying purpose.") (citations omitted).

19. Transcript, at 10.

formed first impressions about a traveler's immigration status would impede proper performance of their duties. Furthermore, any rule that hinges on an agent's subjective belief would be difficult to enforce because it would necessitate a determination of the exact moment the agent became convinced of a person's legal presence in the country. Requiring such an analysis would utterly frustrate the Fifth Circuit's attempt to create a workable test for immigration stops.[20]

### c. Referral and Detention at the Secondary Inspection Area

■■■ Border Patrol agents do not need reasonable suspicion to refer vehicles to secondary.[21] However, the duration of the detention at secondary continues to be confined by the immigration-related basis for the stop.[22] If in performing a legitimate immigration checkpoint stop, an agent becomes aware of specific, articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion of other criminal activity, he may extend the detention to investigate those non-immigration matters.[23]

In the instant case, Agent Fernandez conducted the immigration inspection in the primary inspection lane of the checkpoint. Therefore, prolonging the detention by referring Defendant to the secondary inspection area is justified only if, under the totality of the circumstances, he had reasonable suspicion that Defendant was engaged in criminal activity. An examination of Agent Fernandez's interaction with Defendant demonstrates that reasonable suspicion existed.

■■ As soon as Agent Fernandez approached Defendant's car, he noticed hot air blasting from the fans on the dashboard. The temperature of the air and the maximum setting of the fans struck the Agent as unusual because it was a warm day and because he knew that the fan could be used by smugglers attempting to distract an agent. More significantly, Defendant's responses to the questions and his demeanor throughout the questioning roused the Agent's suspicions. Defendant was not taking the most common or direct route to Austin, could not name his employer, nervously produced a business card that did not have any connection to him, and gulped and hesitated before answering certain questions. The combination of these factors created reasonable suspicion sufficient to justify prolonging Defendant's detention and referring him to secondary.

While at the secondary inspection area, Agent Martinez searched the trunk of the vehicle pursuant to Defendant's voluntary consent, which Defendant does not contest. It is well settled that law enforcement officers may conduct searches pursuant to an individual's voluntary consent, even

---

20. *Machuca–Barrera,* 261 F.3d at 434 (explaining that the court created a test that is "both workable and which reinforces [its] resistance to parsing the relevance of particular questions.").

21. *Martinez–Fuerte,* 428 U.S. at 563, 96 S.Ct. 3074.

22. *Machuca–Barrera,* 261 F.3d at 434 n. 29 ("Thus, while a border patrol agent may refer a car to secondary for any reason (or no reason at all), ... the length of the detention is still limited by the immigration-related jus-

tification for the stop....") (citations omitted).

23. *Id.* at 434; *United States v. Portillo–Aguirre,* 131 F.Supp.2d 874, 880 (W.D.Tex. 2001); *see also United States v. Espinoza–Santill,* 976 F.Supp. 561, 570 (W.D.Tex.1997) ("Once a legal stop is made, an agent need not wear blinders and be oblivious to everything going on around him. In fact, an agent can, and should, be very vigilant in trying to ferret out illegal activity within the confines of the law.").

without a warrant or probable cause to search.[24]

■ The search of the trunk revealed signs of possible narcotics trafficking, including the neat arrangement of the luggage and the plastic wrapping protruding from one of the open bags. Thus, the Agents were justified in patting down Defendant for officer safety.[25] Defendant's incriminating comments justified detaining him until a canine arrived and positively alerted to the luggage inside the trunk.

### CONCLUSION

The Court finds that no search was performed at primary, the immigration inspection at primary was within the proper scope of the stop, and Agent Fernandez had reasonable suspicion that Defendant was involved in criminal activity, thereby justifying the extended detention of Defendant. Thus, no Fourth Amendment violation occurred.

It is therefore ORDERED that Defendant's Motion to Suppress is DENIED.

---

**24.** *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Jenkins,* 46 F.3d 447, 451 (5th Cir.1995).

**25.** *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v.*

*Robinson,* 119 F.3d 663, 667 (8th Cir.1997) (holding that a pat down was justified when officers had reasonable suspicion that defendant was involved in drug deal because "weapons and violence are frequently associated with drug transactions.") (citations and internal quotations omitted).