# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 16, 2011

Lyle W. Cayce
Clerk

No. 09-41142

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEONEL GARCIA, III,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
No. 5:09-CR-727

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Leonel Garcia, III, was convicted of one count of possession with intent to distribute less than fifty kilograms of marihuana under 21 U.S.C. § 841(a)(1) and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41142

(b)(1)(D) and 18 U.S.C. § 2. He appeals, challenging the denial of his motion to suppress the marihuana seized from his truck when he attempted to enter the United States at a border patrol checkpoint. We affirm, because Garcia consented to further searches before the agents had completed the programmatic immigration purpose of the stop, so the search was reasonable.

I.

Garcia approached the checkpoint just south of Hebbronville, Texas, in his pickup truck. Border Patrol Agent Carlos Cortez stopped the truck and asked Garcia the routine immigration checkpoint questions about his citizenship, where he was coming from, and where he was going. Garcia answered that he was a U.S. citizen headed to Falfurrias, Texas, and that he was coming from his job at an oil rig near La Gloria, one mile south of the checkpoint.

About fifteen seconds into the questioning, Agent Ron Williams approached the truck and began visually inspecting it. He noticed a gasoline can in the truck bed, which from experience he knew could mean that the driver was carrying extra gas because the gas tank contained contraband. Williams bent down to inspect the tank and noticed that it had clean patches that were inconsistent with the wear on the rest of the vehicle, indicating that someone had recently tampered with it.

At the same time, a third agent, Flores, approached the vehicle from the other side and also inspected the tank. Shortly thereafter, he said to Williams that it "looks like a gas tank," thus confirming Williams's suspicions. Williams then flashed a hand signal to Cortez indicating that the truck should undergo secondary inspection. The hand signal came about ninety seconds into the stop, just after Cortez had completed the questioning about Garcia's citizenship.

Within a few seconds of seeing the hand signal, and about ten seconds after completing the questioning about citizenship, Cortez asked Garcia whether

No. 09-41142

he would consent to pulling over for a secondary inspection, and Garcia agreed. There were no other questions between the citizenship questions and the request for consent.

Garcia pulled to the side of the road while Williams obtained a dog, which immediately alerted to the gas tank. The agents continued the search by using a scope that indicated that the inside of the tank was obstructed. They took the truck to the Border Patrol station in Hebbronville, where they removed the tank and found approximately forty kilograms of marihuana.

## II.

"In an appeal from the denial of a motion to suppress, we review questions of law de novo and the district court's factual findings for clear error." *United States v. Portillo-Aguirre*, 311 F.3d 647, 651-52 (5th Cir. 2002). Agents may stop a vehicle briefly at a border patrol checkpoint without a warrant or individualized reasonable suspicion for the purpose of identifying illegal aliens. *United States v. Jaime*, 473 F.3d 178, 181 (5th Cir. 2006). Nonetheless, "'checkpoint searches are constitutional only if justified by consent or probable cause to search' and '[a]ny further detention . . . must be based on consent or probable cause.'" *Id.* (alterations in original) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 567 (1976)).

The agents obtained Garcia's consent to a further search ninety seconds into the stop. That search led to a positive canine alert, which then justified further detention and searches. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995). Thus, the entire search is reasonable if the detention was reasonable up to the point when the agents obtained Garcia's consent for further searches.

The pre-consent detention was reasonable. Agents may stop travelers at an immigration checkpoint stop for as long as "reasonably necessary to determine the citizenship status of the persons stopped." *United States v. Machuca-*

3

No. 09-41142

*Barrera*, 261 F.3d 425, 433 (5th Cir. 2001). That period includes "the time neces-sary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, *and request consent to extend the detention.*" *Id.* (emphasis added). Cortez asked for consent to extend the detention within ten seconds after he completed his immi-gration questioning and without any intervening questions. Such a brief pause is within the time reasonably necessary to formulate the request for consent and thus was part of the programmatic immigration purpose of the stop.

Garcia argues that a detention of even a few seconds beyond the comple-tion of the immigration purpose impermissibly prolongs the stop. *See United States v. Ellis*, 330 F.3d 677, 680-81 (5th Cir. 2003). That contention misses the point, for the request for consent to extend the stop was itself part of the immi-gration purpose of the stop and did not extend the stop beyond the immigration purpose in any way.

It is true that the agents' request for consent to search apparently was motivated by their suspicion that Garcia was carrying drugs and not by a desire to conduct further immigration questioning. While Cortez was questioning Gar-cia, two agents had independently examined the gas tank by looking underneath the truck, and both had concluded that it looked suspicious. Moreover, the gas can in the bed of the truck corroborated their suspicion that the tank was filled with contraband. The agents communicated those drug-related concerns to Cor-tez, who combined those concerns with his own observations about Garcia's over-ly cheerful manner and decided to ask for consent for further searches. The mo-tivation behind the request, therefore, was to explore the agents' drug-related suspicions.

Leaving aside the question whether those drug-related concerns them-selves rose to the level of reasonable suspicion, the motivations behind the agents' questions are not constitutionally significant. *See Machuca-Barrera*, 261

No. 09-41142

F.3d at 434 ("We deploy a test that is both workable and which reinforces our resistance to parsing the relevance of particular questions. To scrutinize too closely a set of questions asked by a Border Patrol agent would engage judges in an enterprise for which they are ill-equipped and would court inquiry into the subjective purpose of the officer asking the questions."). Instead, "policing the duration of the stop is the most practical enforcing discipline of purpose." *Id.* Because *Machuca-Barrera* recognizes that a request to extend the detention may be permissible for the reasonably necessary time needed for the programmatic purpose of the stop to be completed, any drug-related suspicions that might have motivated the question, in this case, are irrelevant.

Consequently, we conclude that the agents obtained consent for further searches before the end of the permissible immigration purpose of the stop. Their searches were reasonable, and the denial of the motion to suppress was not error.

The judgment of conviction is AFFIRMED.