JENNIFER WALKER ELROD, Circuit Judge,
dissenting:
At a fixed interior immigration checkpoint approximately sixty-seven miles from the United States-Mexico border, United States Air Force officer Richard Rynear-son presented four forms of government-issued identification including official and personal U.S. passports — to show that he is a United States citizen. Yet Agent Lands refused to examine the passports and Agent Perez, rather than simply scrutinizing the passports, asked Rynearson to identify his commanding officer and then made Rynearson wait while he placed phone calls to Rynearson’s employer. Because the law is clearly established that immigration officials violate the Fourth Amendment when they continue to detain a traveler beyond the time reasonably necessary to investigate his citizenship status, I respectfully dissent.
I.
The majority opinion accurately recites many of the facts that gave rise to this controversy, but I write to emphasize a couple of points. First, for the duration of the stop, Rynearson asserted his rights while also providing the documentation needed to prove his citizenship status. The majority opinion labels these actions “tactics” and calls them “unorthodox” and “unusually uncooperative.” However, as the majority opinion recognizes — and a review of the record and the video confirms[1] —Rynearson began cooperating as early as two minutes into the stop by producing identification documents.[2] Moreover, while he provided the information needed to prove his citizenship, Rynearson explained several times that he would not indulge the officers’ commands when he thought that they exceeded the limited scope of the immigration checkpoint inquiry. Standing on one’s rights is not an “unorthodox tactic[].” It is a venerable American tradition.
*307 Second, the record also shows that Agents Lands and Perez did not expeditiously investigate Rynearson’s citizenship status. Approximately two minutes into the stop, Rynearson displayed his military identification and driver’s license for Agent Lands, but Agent Lands waited until approximately eleven minutes into the detention to inform Rynearson that those identification cards “don’t mean anything.” At that point, Rynearson immediately offered to show Agent Lands his official and personal U.S. passports. Agent Lands ignored the offer and, for the first time, finally asked Rynearson whether he was a United States citizen. Rynearson responded affirmatively, but he was not then permitted to leave, and Agent Lands never asked to see Rynearson’s passports.
Almost eighteen minutes into the detention, Agent Perez arrived and asked for Rynearson’s passports. Rynearson instantly surrendered them. Rather than simply examine the passports, however, Agent Perez asked Rynearson to identify his commanding officer and attempted to call the Provost Marshal[3] and CID.[4] Agent Perez spent ten to fifteen minutes on these phone calls, and Agent Lands did not inform Rynearson that he was free to leave until more than fifteen minutes after Agent Perez took his passports.[5] In total, approximately twenty-three minutes transpired between the time that Rynearson offered his passports to Agent Lands and the time that the detention ended, for a total detention time of approximately thirty-four minutes. Although Agent Perez did scrutinize Rynearson’s passports at some point during the final portion of the detention, Agent Lands stated in a declaration that such records checks generally take a “couple of minutes.”
II.
Agents Lands and Perez argue that, on summary judgment, they can invoke qualified immunity to defeat Rynearson’s Bivens action against them. The “First, a court must decide whether the facts ... alleged ... make out a violation of a constitutional right.” Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). “Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was ‘clearly established’ at the time of [the] alleged misconduct.” Id. This second prong of the qualified immunity analysis asks whether “[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates [the] right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Stated another way, “in the light of pre-existing law the unlawfulness must be apparent.” Id. Qualified immunity applies unless both prongs are satisfied. Pearson, 555 U.S. at 232, 129 S.Ct. 808.
The Supreme Court has made clear that while the Fourth Amendment permits routine, suspicionless stops at fixed checkpoints near the border, the scope of such *308 stops is “quite limited.” United States v. Martinez-Fuerte, 428 U.S. 543, 557, 562, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). “[A]ll that is required of the vehicle’s occupants is a response to a brief question or two and possibly the production of a document evidencing a right to be in the United States.” Id. at 558, 96 S.Ct. 3074 (internal quotation marks omitted). Moreover, this court has held that “[t]he scope of an immigration checkpoint stop is limited to the justifying, programmatic purpose of the stop: determining the citizenship status of persons passing through the checkpoint.” United States v. Machuca-Barrera, 261 F.3d 425, 433 (5th Cir.2001). “It follows that the permissible duration of an immigration stop is the ‘time reasonably necessary to determine the citizenship status of the persons stopped.’ ” United States v. Portillo-Aguirre, 311 F.3d 647, 653 (5th Cir.2002) (quoting Machuca-Barrera, 261 F.3d at 433).
“An officer may ask questions outside the scope of the stop, but only so long as such questions do not extend the duration of the stop.” Machuca-Barrera, 261 F.3d at 432. “Conversely, when officers detain travelers after the legitimate justification for a stop has ended, the continued detention is unreasonable.” Portillo-Aguirre, 311 F.3d at 654. “[A]ny further detention beyond a brief question or two or a request for documents evidencing a right to be in the United States must be based on consent or probable cause,” Portillo-Aguirre, 311 F.3d at 652, or upon reasonable suspicion, Machuca-Barrera, 261 F.3d at 434. Even a three-minute extension beyond a detention’s permissible duration is cognizable as a Fourth Amendment violation. See Portillo-Aguirre, 311 F.3d at 654.
By making Rynearson wait for thirty-four minutes, ignoring a verbal affirmation of U.S. citizenship, and rejecting multiple forms of identification, Agents Lands and Perez far exceeded the scope of the immigration-checkpoint 12 inquiry as the Supreme Court defined it in Martinez-Fuerte. Putting aside the dilatory nature of the stop as a whole, at a bare minimum, once Rynearson offered his passports to Agent Lands, any further detention other than the couple of minutes required to authenticate the passports was unnecessary. The State Department may issue passports only to United States citizens and non-citizen nationals. 22 U.S.C. § 212. As detailed above, Agent Lands refused to even look at the passports, and Agent Perez did not simply verify the passports’ authenticity — he asked for the identity of Rynearson’s commanding officer and wasted ten to fifteen minutes placing unnecessary phone calls to military law enforcement.
One cannot escape the impression that Agent Lands’s refusal to look at the passports and Agent Perez’s irrelevant phone calls to Rynearson’s employer operated as retribution against Rynearson for asserting his rights; about three minutes into the stop, a fellow officer even pointed out the cameras in Rynearson’s car. But putting that to one side,[6] after Rynearson offered his passports, Agents Lands and Perez needed only to examine them to determine whether Rynearson was a United States citizen. Therefore, Agents Lands and Perez detained Rynearson longer than “reasonably necessary to determine the citizenship status of the per *309 son[] stopped.”[7] Machuca-Barrera, 261 F.3d at 433.
In addition, I would hold that at the very least, Agents Lands and Perez failed to demonstrate entitlement to qualified immunity with respect to the twenty-three minutes of detention that followed Rynear-son’s offer to show Agent Lands his passports. In light of Martinez-Fuerte, Ma-chucar-Barrera, and Portillo-Aguirre, and on the record as it currently stands in this case, no reasonable officer would believe that he could lawfully detain a traveler for twenty-three minutes after the traveler presents a valid U.S. passport — better evidence of United States citizenship than the state — issued forms of identification that highway travelers most frequently carry on their person. Far more than simply ask Rynearson to give the limited information that the Supreme Court allows officers to demand at fixed border checkpoints — “a response to a brief question or two and possibly the production of a document evidencing a right to be in the United States,” Martinez-Fuerte, 428 U.S. at 558, 96 S.Ct. 3074 — Agents Lands and Perez were dissatisfied with four forms of government — issued identification and a verbal affirmation of United States citizenship. All that remained after Rynearson’s offer to surrender his passports was to authenticate them. On the present record, no reasonable officer — in light of Martinez-Fuerte, Machucar-Barrera, and Por-tillo-Aguirre — would believe that he was entitled to take an additional twenty-three minutes while ignoring the passports and placing phone calls to Rynearson’s employer.
III.
Firm assertions of one’s rights are far from “unorthodox” in a Republic that insists constitutional rights are worth insisting upon and that tasks the courts with protecting those rights. See, e.g., Brown v. Texas, 443 U.S. 47, 52-53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (holding that without reasonable suspicion, police may not require citizens to stop and identify themselves); Kolender v. Lawson, 461 U.S. 352, 353-54, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (invalidating a stop-and-identify statute on vagueness grounds). Government officials, like the defendants in this case, often contend that “[f]ailure to conform is ‘insubordination,’” W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 629, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), but it is the courts that must draw the line “between authority and rights of the individual,” id. at 630, 63 S.Ct. 1178. In drawing this line, we do not rely upon “whether ... we would think” complying with an official’s commands “to be good, bad or merely innocuous.” Id. at 634, 63 S.Ct. 1178. “Nor does our duty to apply the Bill of Rights to assertions of official authority depend upon our possession of marked competence in the field where the invasion of rights occurs.” Id. at 639, 63 S.Ct. 1178. Rather, “we act in these matters not by authority of our competence” or by our perception of the plaintiffs actions, “but by force of our commissions.” Id. at 640, 63 S.Ct. 1178.
*310 Agents Lands and Perez failed to demonstrate their entitlement to qualified immunity because the law is clearly established that immigration officials may not detain travelers longer than reasonably necessary to investigate their citizenship status. For the foregoing reasons, I would reverse the judgment of the district court and remand for further proceedings.

. As the majority opinion observes, Rynear-son posted a video of the incident on the internet, and the defendants attached it as an exhibit to their motion to dismiss. The video, which is divided into four parts and entitled "Full Video — Border Patrol Incident,” appears at the following links:
Part One: https://www.youtube.com/watch? v=4BIdlf8WG2s
Part Two: https://www.youtube.com/watch? v=NqU9M9RyeZA
Part Three: https://www.youtube.com/ watch?v=o8GDNFleCI8
Part Four: https://www.youtube.com/watch? v=mZbCCBH7YM4

. Because the parties' agree that Rynearson’s video is accurate, we must ”view[] the facts in the light depicted by the videotape.” Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

. The Provost Marshal is the officer in charge of the military police.

. "CID" refers to the U.S. Army Criminal Investigation Command.

. The majority opinion incorrectly asserts that Agent Perez was the one who returned the passports to Rynearson and informed him that he was free to leave. In fact. Agent Lands (not Agent Perez) was the officer who returned the passports; in his declaration, Agent Perez averred that he "informed [Agent Lands] to release Mr. Rynearson and to return Rynearson’s passports and send him on his way.” ROA. 266. In addition, the agents’ voices are clearly distinguishable on the videotape, and Agent Lands is the one speaking when Rynearson receives his passports and is informed that he may leave.

. Evidence of a defendant's subjective intentions is not relevant to the qualified-immunity defense. See Harlow v. Fitzgerald, 457 U.S. 800, 817-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Crawford-El v. Britton, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

. The length of the detention cannot be justified on the alternative basis of reasonable suspicion. At oral argument, the government correctly conceded that “this is not a Terry case.” A drug dog did not alert when agents led it behind the car. Later, Rynearson asked Agent Lands several times whether he had reasonable suspicion to detain him; Agent Lands insisted that the detention did not require it. When Rynearson asked whether Agent Lands believed that Rynearson had violated an immigration law, Agent Lands responded, "I didn’t say you violated an immigration law.” Indeed, Agent Lands insisted that he needed no articulable reason at all to detain Rynearson.