# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-40962

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JORGE ERVEY HIPOLITO-RAMIREZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

August 9, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:15-CR-266-1

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

Appellant Jorge Ervey Hipolito-Ramirez was indicted on three drug-related counts in the Southern District of Texas. After the district court denied his motion to suppress, Hipolito-Ramirez entered a conditional plea of guilty, reserving the right to appeal the denial of the motion to suppress. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40962

I.

On April 29, 2014, Appellant Jorge Ervey Hipolito-Ramirez and his passenger approached an immigration checkpoint north of Laredo, Texas. Hipolito-Ramirez drove a mid-size SUV and proceeded to the checkpoint, where Agent Gustavo Flores, an eleven-year Border Patrol veteran, stopped him for a routine immigration inspection. Pursuant to the inspection, at 5:03 PM, Agent Flores first asked whether Hipolito-Ramirez and his passenger were United States citizens. Hipolito-Ramirez handed over their immigration documents, which consisted of B-1, B-2 visas and I-94 permits. According to Agent Flores, these documents are processed in a computer booth to run criminal history checks and verify the names and crossing data of aliens entering into the United States. The procedure is brief[1] and required at immigration inspections for "processing somebody through the checkpoint with a B-1, B-2 visa and an I-94."

Agent Flores then asked where Hipolito-Ramirez was going and why. Hipolito-Ramirez said he was going to San Marcos to buy shirts for resale in Mexico. Agent Flores thought that Hipolito-Ramirez was "speaking a little loud" and seemed "nervous." Because it was already after 5:00 PM, Agent Flores asked if Hipolito-Ramirez planned to stay the night in San Marcos. Hipolito-Ramirez answered no. These answers struck Agent Flores as suspicious. In his personal experience, the outlets in San Marcos closed around 9:00 PM and, because it was a Tuesday, Hipolito-Ramirez would likely encounter rush hour traffic in San Antonio during the already-long drive from Laredo to San Marcos—leaving him little or no time to shop before the stores closed. Agent Flores also thought a person traveling to the outlet malls at that hour would typically spend the night.

---

[1] When Agent Flores ran the documents, the process took roughly four seconds.

No. 15-40962

Agent Flores continued inspecting the SUV and, at 5:03:15 PM, spotted two large suitcases located in the rear cargo area. Hipolito-Ramirez volunteered that he buys shirts for $5 each at the outlets and resells them in Mexico for two hundred pesos, and that the suitcases would store the shirts. This statement further raised Agent Flores's suspicions because he had never seen any shirts that sold for $5 at the San Marcos outlets. At this point, Agent Flores later testified: "[He] didn't know what was going on. [He] knew the story was off." Accordingly, between 5:03:17 PM and 5:03:23 PM, Agent Flores called for a dog to conduct a free air sniff of the vehicle. Flores waited behind the car, and Agent Zayra Espinoza arrived with her assigned service canine, Toxy, less than one minute later, at approximately 5:03:55 PM.

At their arrival, Hipolito-Ramirez volunteered that he had previously undergone an x-ray inspection at the border. Agent Flores went into the processing booth to confirm this. Meanwhile, Agent Espinoza and Toxy walked around the car as Toxy sniffed. Toxy did not alert at any point. Agent Flores returned and asked Hipolito-Ramirez for consent to search the suitcases; Hipolito-Ramirez consented. Agent Flores opened the suitcases and observed that they appeared empty. Nevertheless, after he finished processing the permits and visas—which raised no red flags—Agent Flores asked for consent to further search the car. Hipolito-Ramirez again consented and moved the vehicle to a secondary inspection area. During the ensuing search, Toxy alerted to the two suitcases. Agent Espinoza opened the lining of the suitcases and found nearly 11 kilograms of methamphetamine.

Hipolito-Ramirez was arrested and indicted in the Southern District of Texas on three drug-related counts. He moved to suppress the

3

No. 15-40962

methamphetamine and the statements he made while under arrest,[2] arguing *inter alia* that they resulted from an unconstitutionally prolonged seizure. After a hearing at which Agent Flores and Agent Espinoza testified, a magistrate judge recommended denying the motion on several grounds. The district court adopted the magistrate judge's report in full. Hipolito-Ramirez then pled guilty, conditional on an appeal of the denial of the motion to suppress. This appeal followed.

## II.

"Where a district court has denied a motion to suppress evidence, we review its factual findings for clear error and its conclusions of law *de novo*. We view the evidence in the light most favorable to the party that prevailed below. We may affirm the district court's decision on any basis established by the record."[3]

## III.

The only issue on appeal is whether Agent Flores unlawfully prolonged the stop at the immigration checkpoint. Hipolito-Ramirez concedes that Agent Flores needed no justification to perform the initial stop and briefly investigate his citizenship status.[4] He further concedes that Agent Flores could search his luggage and otherwise prolong the stop once he provided consent.[5] Hipolito-Ramirez, however, does challenge his detention during the approximately one-minute period between when the investigation of his immigration status ended and when he provided consent. Hipolito-Ramirez insists that by the time the canine arrived, Agent Flores could have verified his citizenship status and

---

[2] He also moved to suppress evidence obtained from his cell phone. The district court granted that motion, and it is not at issue on appeal.

[3] *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.) (citations omitted), *as modified on denial of reh'g en banc*, 622 F.3d 383 (5th Cir. 2010).

[4] *See United States v. Machuca-Barrera*, 261 F.3d 425, 431-33 (5th Cir. 2001).

[5] *Id.* at 435 & n.33.

No. 15-40962

completed the immigration stop. As a result, he argues that Agent Flores had no justification for continuing to detain him while the canine search was performed and thus unlawfully extended the stop beyond "the time needed to handle the matter for which the stop was made."[6]

We disagree. Hipolito-Ramirez is correct that "[t]he permissible duration of an immigration checkpoint stop is . . . the time reasonably necessary to determine the citizenship status of the persons stopped."[7] But even so, Agent Flores was entitled to prolong the stop if he had developed reasonable suspicion of illegal activity by that point.[8] And as Agent Flores testified, his suspicions were already aroused by Hipolito-Ramirez's nervousness and dubious story. This Court has recognized that "[i]nconsistent stories, especially when combined with other facts, can give rise to reasonable suspicion."[9] We conclude that Agent Flores had developed "reasonable suspicion" of illegal activity by the time the canine arrived based upon the combination of (1) Hipolito-Ramirez's implausible story, (2) his nervousness, and (3) his presence on a known drug trafficking corridor.[10] Accordingly, Agent Flores was justified in extending the stop while the canine search was performed, and the district court did not err in denying the motion to suppress.

IV.

For the reasons stated above, we AFFIRM.

---

[6] *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015).

[7] *Machuca-Barrera*, 261 F.3d at 433.

[8] *See, e.g., id.* at 434; *United States v. Ventura*, 447 F.3d 375, 378 (5th Cir. 2006).

[9] *United States v. Pena-Gonzalez*, 618 F. App'x 195, 200 (5th Cir. 2015); *accord United States v. Bernal*, 638 F. App'x 379, 379-80 (5th Cir. 2016) (collecting cases).

[10] *United States v. Pack*, 612 F.3d 341, 361-62 (5th Cir.) (concluding that reasonable suspicion was created by the defendant's extreme nervousness, conflicting story, and the fact that he was traveling along a drug trafficking corridor), *as modified on denial of reh'g en banc*, 622 F.3d 383 (5th Cir. 2010).