United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2007

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 06-50783

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

RAFAEL JESUS IBARRA

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, DeMOSS, and OWEN, Circuit Judges.

DeMOSS, Circuit Judge:

Rafael Jesus Ibarra appeals his conviction for possession with intent to distribute over five kilograms of cocaine. Ibarra contends that the district court erred by (1) failing to suppress evidence seized after a traffic stop, (2) refusing to reveal the identity of a confidential informant, and (3) allowing a DEA agent to testify during trial that in his opinion, no drug trafficking organization would entrust a large shipment of cocaine to a driver without knowledge of what he was transporting. For the following reasons, we AFFIRM the rulings of the district court on the first two issues, but we VACATE the conviction and REMAND for new trial because the admission of the DEA agent's testimony was not harmless error.

I.

On October 5, 2005, DEA Agent Smith received a tip from a confidential informant that a particular tractor-trailer was transporting narcotics. The tractor-trailer was discovered at a Freightliner facility in Odessa, Texas, where the tractor was receiving repairs. With the consent of the management at the Freightliner facility, Agent Smith set up surveillance on both the tractor and the unhitched trailer. A canine unit was brought in to sniff the perimeter of the trailer and the dog positively alerted for the presence of narcotics. The trailer was not searched at that time but remained under surveillance.

The next day, a new tractor arrived to pick up the subject trailer. The surveillance team allowed the new tractor to drive out of the Freightliner facility with the trailer in tow. Agent Smith informed Lieutenant Rawls of the Texas Department of Public Safety that a tractor-trailer carrying a load of narcotics would be traveling on the highway. The DPS was asked to monitor the vehicle after it left the Freightliner facility.

Trooper McGuarit of DPS received the call from Lieutenant Rawls to be on the lookout for the subject trailer. He was provided a license plate number and description of the trailer's logo. McGuarit was instructed to pull the truck over if the driver violated any traffic laws. He was also instructed that if he developed reasonable suspicion of criminal activity, he was to try to obtain consent to search. McGuarit located the vehicle on Interstate 20 and stopped the vehicle after determining that it was speeding and that its right rear mud flap was not rigid as required by law.

The driver of the tractor-trailer was Ibarra. McGuarit requested documentation for the load and asked Ibarra and the passenger, Andres Anzaldo-Diaz, questions about the load and their travel route. McGuairt later testified at trial that he observed numerous indicators throughout the traffic

2

stop that led him to believe that Ibarra and Diaz were involved in some type of illegal activity. McGuairt radioed for a canine unit to be sent. After further questioning, McGuairt explained to Ibarra that he was writing a warning for the speeding and mud flap violations, but that he was issuing a citation for an expired insurance card. McGuairt returned all of Ibarra's documentation, and then asked if he could search the trailer. Ibarra consented.

The canine unit that arrived at the scene alerted to the presence of narcotics. The trailer was taken to a secured area and searched. Two hundred and sixty-four packages of cocaine were discovered concealed within eighteen frozen, shrink-wrapped boxes.[1] Ibarra was arrested and charged with possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The net weight of the cocaine was 264.3 kilograms, and at trial, DEA Agent Friday testified that this amount of cocaine would be worth approximately $4 million.

Ibarra's sole defense was that he was unaware that some of the boxes in the trailer contained narcotics, therefore, the main issue at trial was proving that Ibarra knowingly transported the cocaine. Ibarra had told Trooper McGuairt during the traffic stop that he was carrying pork neck bones from a company named Brawley Beef and that he had been present when the truck was loaded in Brawley, California. Ibarra produced a bill of lading that confirmed his story. At trial, the Government's case in chief focused on disproving this statement by showing that Brawley Beef did not sell pork products and by tracing the origin of one of the boxes containing cocaine to show that the box was loaded in Phoenix, Arizona, not Brawley, California as Ibarra had claimed. The Government's other evidence consisted of (1) multiple bills of lading that the Government claimed to be false, (2) testimony from Trooper McGuarit as to

---

[1] The boxes with the cocaine were found among approximately 800 boxes that were all identical in appearance.

Ibarra's behavior during the traffic stop that he believed to be suspicious, (3) a video recording of the traffic stop, and (4) DEA Agent Friday's testimony that in his experience he had never seen a drug trafficking organization entrust a shipment of narcotics of that size to a courier without the courier knowing that he was carrying something illegal.

Prior to trial, the district court held evidentiary hearings on Ibarra's motion to suppress evidence and motion to reveal the identity of the confidential informant. Both motions were denied. The court also denied Ibarra's pre-trial motion in limine to exclude the testimony of Agent Friday. After the jury trial, Ibarra was found guilty as charged. Ibarra filed a motion for judgment of acquittal, which the court denied. The court sentenced Ibarra to 235 months imprisonment.[2] Ibarra timely appeals to this Court.

II.

A. Motion to Suppress Evidence

Ibarra argues on appeal that the search of the trailer on Interstate 20 was not supported by probable cause or valid consent. Therefore, Ibarra believes the court erred by denying his motion to suppress evidence seized from the trailer. We review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Runyan, 275 F.3d 449, 456 (5th Cir. 2001). For our review, we may consider all of the evidence presented at trial, not just that presented before the ruling on the suppression motion, in the light most favorable to the prevailing party, which in this case is the Government. See id.

The district court held that probable cause was lawfully established at the Freightliner facility at the time the first police dog alerted to the presence of narcotics within the trailer. The court also concluded that after the stop on Interstate 20, probable cause still existed even though Trooper McGuairt did not

---

[2] The Guideline range was 235-293 months imprisonment.

have actual knowledge of all of the details, based on the "collective knowledge" doctrine. Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts. United States v. Kye Soo Lee, 962 F.2d 430, 435 (5th Cir. 1992).

Ibarra argues the court erred in applying the collective knowledge doctrine because the Government conducted an illegal search at the Freightliner facility, and therefore any information obtained from that search was tainted and could not be used as probable cause for the stop on Interstate 20. We agree with the district court that probable cause was properly established at the Freightliner facility. The agents received permission from the management at Freightliner to enter and use the premises to set up surveillance on the particular tractor and trailer. Furthermore, it is firmly established that the dog sniff of the exterior of the trailer is not a "search" within the meaning of the Fourth Amendment. See United States v. Place, 462 U.S. 696, 707 (1983); United States v. Seals, 987 F.2d 1102, 1106 (5th Cir. 1993).

Agent Smith knew all of the facts giving rise to the probable cause to search the trailer, and there was communication between Agent Smith, Lieutenant Rawls, and Trooper McGuarit regarding the investigation of this trailer. Therefore, Agent Smith's knowledge of probable cause can be imputed to Trooper McGuarit under the collective knowledge doctrine, see Kye Soo Lee, 962 F.2d at 435, and because the trailer was in transit at the time, no warrant was necessary, see California v. Carney, 471 U.S. 386, 390 (1985).[3] Because we

---

[3] Ibarra alternatively argues that a warrant was necessary to search the interior of the trailer because at the time the first canine unit alerted to narcotics, the trailer was unhitched from the tractor and not "readily mobile." See Carney, 471 U.S. at 392-93 (discussing that the automobile exception applies to vehicles that are "readily mobile"). We do not need to reach this issue in this case, however, because even if no exigent circumstances existed while the

5

hold that Trooper McGuarit had probable cause and exigent circumstances to search the vehicle without a warrant, we do not need to analyze whether, in the alternative, Ibarra's consent to search was voluntarily given. The order of the district court denying Ibarra's motion to suppress is AFFIRMED.

B. Motion to Reveal the Identity of the Confidential Informant

Ibarra next appeals the denial of his motion to disclose the identity of the informant who alerted authorities that the tractor-trailer at the Freightliner facility contained a large quantity of drugs. Ibarra believes that this information would have aided him in his defense by providing a witness who could confirm that Ibarra had no knowledge of the drugs.

A district court's decision to grant or deny disclosure of an informant's identity is reviewed for an abuse of discretion. United States v. De Los Santos, 810 F.2d 1326, 1332 (5th Cir. 1987). This Court uses a three factor test to determine whether the identity of an informant should be revealed: (1) the level of the informant's activity; (2) the helpfulness of the disclosure to the asserted defense; and (3) the Government's interest in nondisclosure. Id. at 1331.

The court held an in camera hearing regarding the informant, and prior to the hearing, Ibarra's counsel met with the district judge to discuss Ibarra's theory of the case so that the court could determine whether there was any information of value to the defense. After the hearing, the court concluded (1) the confidential informant in this case was a mere tipster and not involved in the activities leading up to Ibarra's arrest; (2) there was no information provided by

---

trailer was parked at the Freightliner facility, law enforcement are not required to obtain a warrant as soon as it is practicable to do so. United States v. Carillo-Morales, 27 F.3d 1054, 1063 (5th Cir. 1994). The mere fact that the agents did not conduct the search while the trailer was parked at Freightliner did not extinguish the existence of probable cause to search the trailer after it left. At the time the tractor-trailer was stopped by Trooper McGuarit, the trailer squarely fell within the automobile exception to the warrant requirement. We have held that the decision to not obtain a warrant does not automatically preclude law enforcement from relying on exigent circumstances that arises later, even if the exigent circumstances were foreseeable. United States v. Webster, 750 F.2d 307, 327 (5th Cir. 1984).

the confidential informant that would aid Ibarra in his defenses; and (3) the Government had a substantial interest in nondisclosure because there could be a "real risk" to the safety of the informant and his family and because disclosure could also jeopardize other ongoing criminal investigations.

After reviewing the transcripts of the in camera hearing, we find that the district court properly applied the three-factor test and did not abuse its discretion in denying the motion to reveal the confidential informant's identity. This order is AFFIRMED.

C.     Expert Testimony as to a Drug Courier's Knowledge

Over Ibarra's objection, the district court allowed DEA Agent Friday to testify that in his experience he had never seen a courier entrusted with an amount of cocaine of that size (worth approximately $4 million) without the courier knowing that he was carrying something illegal. Ibarra appeals.

A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002). Any error in admitting evidence is subject to harmless error review. United States v. Williams, 957 F.2d 1238, 1242 (5th Cir. 1992). Federal Rule of Evidence 704(b) prohibits an expert from stating an opinion as to whether the defendant had the requisite state of mind for the crime charged. A jury may reasonably infer that a large quantity of drugs would not be entrusted to a courier without his knowledge, see United States v. Garcia-Flores, 246 F.3d 451, 455 (5th Cir. 2001), however, it is not proper for an expert to testify as to this ultimate issue, see United States v. Cuellar, 478 F.3d 282, 295 (5th Cir. 2007) (en banc).

The Government concedes that the admission of this testimony was an abuse of discretion, however, the Government submits that the error was harmless. Under the harmless error standard, reversal is required if there is "a

reasonable possibility that the improperly admitted evidence contributed to the conviction." Williams, 957 F.2d at 1242.

In this case, the Government did not have any direct evidence linking Ibarra to the cocaine discovered in the trailer. The drugs were concealed, and therefore it was essential for the Government to prove that Ibarra knowingly transported the drugs. See United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990) (holding that when drugs are hidden, additional evidence indicating guilty knowledge is required). Agent Friday's testimony that in his opinion and experience a courier would have knowledge of the drugs was improper testimony that went directly to the ultimate issue to be determined by the jury. In addition, Agent Friday was the last witness heard by the jury, and the testimony was referenced again in closing statements. While it may have been possible for the jury to convict Ibarra beyond a reasonable doubt if the improper testimony had not been admitted, we feel that there is a "reasonable possibility" that Agent Friday's testimony "contributed to the conviction." Williams, 957 F.2d at 1242. Therefore we are not convinced that this error was harmless. The conviction is VACATED and the case REMANDED for new trial.

### III.

The orders of the court denying Ibarra's motion to suppress evidence and motion to reveal the identity of the confidential informant are AFFIRMED. The conviction of guilt is VACATED and the case REMANDED for new trial. All other matters raised on appeal we do not address in light of the fact that we are remanding for new trial.