# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-40441

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MIGUEL ANGEL VEGA-TORRES,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:17-CR-355-1

Before HAYNES, GRAVES, and DUNCAN, Circuit Judges.

PER CURIAM:[*]

Miguel Angel Vega-Torres moved to suppress evidence discovered during an immigration inspection. The district court denied the motion, and Vega-Torres now challenges the district court's order. Vega-Torres argues that the district court reversibly erred in denying his motion because: (1) the agent at the immigration checkpoint stop exceeded the limited citizenship purpose of the stop and unconstitutionally prolonged his detention in violation of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40441

Fourth Amendment, and (2) Vega-Torres's subsequent consent to search was not sufficiently attenuated from the constitutional violation. We disagree.

I.

On May 26, 2017, Vega-Torres was a passenger on a commercial bus stopped at a border patrol checkpoint in Falfurrias, Texas. Border Patrol Agent David Gonzalez boarded the bus to conduct an immigration inspection. Normally, according to Agent Gonzalez's testimony at the suppression hearing, an immigration inspection takes 90 seconds for each passenger. However, Agent Gonzalez's inspection of Vega-Torres took three to five minutes.

Agent Gonzalez asked Vega-Torres for his citizenship documentation. Vega-Torres, who was using his cell phone, handed Agent Gonzalez his Legal Permanent Resident ("LPR") card and then continued to use his cell phone. Agent Gonzalez believed the LPR card was valid, but he had a difficult time matching Vega-Torres's face with the LPR card photo because Vega-Torres only made brief eye contact between looking at Agent Gonzalez to answer questions and using his cell phone. So, Agent Gonzalez, while holding the card, extended his interview and asked Vega-Torres several questions to get Vega-Torres to sustain eye contact with him.

Agent Gonzalez asked Vega-Torres a series of questions because after each response, Vega-Torres would immediately return to looking at his phone. Agent Gonzalez asked Vega-Torres where he was from, and Vega-Torres replied Brownsville, Texas. He asked him where he was heading, and Vega-Torres replied San Antonio. He asked him what his purpose was for going to San Antonio, and Vega-Torres replied that he was visiting family. When Agent Gonzalez asked him what part of San Antonio he was heading to, he replied San Antonio. Based on Agent Gonzalez's experience, people who are attempting to illegally enter the country or smuggle drugs have been coached to give certain answers, but they are unable to answer all the agent's questions.

2

No. 18-40441

After Agent Gonzalez completed his questions, he believed Vega-Torres was "probably okay for immigration purposes," but "believed something else was off."  At the suppression hearing, Agent Gonzalez testified that he had noticed a trend of smugglers wearing baggy shorts to conceal contraband on the back of their thighs and that Vega-Torres was wearing baggy shorts consistent with that trend.  So, he asked Vega-Torres for consent to search him. Vega-Torres consented to the search.

Agent Gonzalez patted Vega-Torres's thigh and felt a solid edge consistent with a bundle of drugs.  Agent Gonzalez observed that Vega-Torres became "jittery" or "nervous."  Agent Gonzalez then asked Vega-Torres to step off the bus for a more thorough search.  During the search outside the bus, Agent Gonzalez found four bundles of cocaine taped to Vega-Torres's thighs.

Vega-Torres was charged by indictment with one count of possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B).  Vega-Torres moved to suppress the evidence obtained during the search.  The district court denied the motion.  First, the district court found that, under the circumstances, the search did not exceed the permissible scope of the immigration stop.  "Based on Vega-Torres's behavior, [Agent Gonzalez] persisted with appropriate questions and quickly developed reasonable suspicion of criminal activity."  Second, the district court found that, based on the totality of the evidence, the Government satisfied its burden of demonstrating that Vega-Torres's consent was voluntary.

Vega-Torres then entered a conditional guilty plea, reserving the right to appeal the district court's denial of his suppression motion.  The district court sentenced Vega-Torres to, *inter alia*, 60 months' imprisonment.

Vega-Torres now timely appeals the district court's order denying his suppression motion.

3

No. 18-40441

## II.

"When examining a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error, viewing the evidence in the light most favorable to the prevailing party." *United States v. Ganzer*, 922 F.3d 579, 583 (5th Cir. 2019) (quotation omitted). "We must defer to the findings of historical fact made by the district court unless left with the definite and firm conviction that a mistake has been committed." *United States v. Freeman*, 914 F.3d 337, 341 (5th Cir. 2019) (quotation omitted). "While this court reviews the district court's legal determination that the historical facts provided reasonable suspicion de novo, 'due weight' must be given to the 'inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* at 341–42 (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). "We will uphold a district court's denial of a suppression motion if there is any reasonable view of the evidence to support it." *Ganzer*, 922 F.3d at 583 (quotation omitted).

## III.

Vega-Torres argues that the district court reversibly erred in denying his motion to suppress because: (1) Agent Gonzalez exceeded the permissible scope of the immigration checkpoint stop and unconstitutionally prolonged Vega-Torres's detention, and (2) Vega-Torres's consent to search was not sufficiently attenuated from the unconstitutional extension of the immigration inspection.

## A.

Relying heavily on *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), Vega-Torres argues that Agent Gonzalez's interview was unconstitutional because Agent Gonzalez failed to "expeditiously and diligently conduct the interview to accomplish the programmatic immigration purpose of the stop." According to Vega-Torres, Agent Gonzalez should have simply asked, "Sir, can you please look at me so that I can see your face," because Agent Gonzalez only

needed to see Vega-Torres's face to ensure that it matched the person in the photo. Asking this one question, or a similar question, Vega-Torres argues, would have satisfied the programmatic purpose of the stop of confirming citizenship and would not have unconstitutionally prolonged his detention.

Under the Fourth Amendment, "Border Agents may conduct 'suspicionless seizures of motorists' for immigration checks at fixed Border Patrol checkpoints." *United States v. Alvarez*, 750 F. App'x 311, 313 (5th Cir. 2018) (per curiam) (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000)). "To determine the lawfulness of a stop, we ask whether the seizure exceeded its permissible duration." *United States v. Machuca-Barrera*, 261 F.3d 425, 432 (5th Cir. 2001). The permissible duration of an immigration stop is "the time reasonably necessary to determine the citizenship status of the persons stopped." *Alvarez*, 750 F. App'x at 313. "This includes 'the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention.'" *Id.* (quoting *Machuca-Barrera*, 261 F.3d at 433).

We have found that an immigration stop, "which determined the citizenship status of the travelers and lasted no more than a couple of minutes before [the agent] requested and received consent to search, was constitutional." *Machuca-Barrera*, 261 F.3d at 435. "Within [the] brief window of time in which a Border Patrol agent may conduct a checkpoint stop, . . . we will not scrutinize the particular questions a Border Patrol agent chooses to ask as long as in sum they generally relate to determining citizenship status." *Id.* at 433. "It is the length of the detention, not the questions asked, that makes a specific stop unreasonable: the Fourth Amendment prohibits only unreasonable seizures, not unreasonable questions, and law enforcement

officers are always free to question individuals if in doing so the questions do not effect a seizure." *Id.* at 432.

"[If] the initial, routine questioning generates reasonable suspicion of other criminal activity, the stop may be lengthened to accommodate its new justification." *Id.* at 434. "Thus, an agent at an immigration stop may investigate non-immigration matters beyond the permissible length of the immigration stop if and only if the initial, lawful stop creates reasonable suspicion warranting further investigation." *Id.*

Accordingly, under *Machuca-Barrera*, Vega-Torres's argument that Agent Gonzalez unconstitutionally prolonged the detention fails. First, Agent Gonzalez's questions related to Vega-Torres's citizenship status, and we will not scrutinize the particular questions Agent Gonzalez asked. Second, the length of Vega-Torres's detention lasted no more than a couple of minutes before Agent Gonzalez requested and received consent to search. Third, Agent Gonzalez had reasonable suspicion to extend the stop based on Vega-Torres's behavior. Under this Circuit's precedent in *Machuca-Barrera*, the district court did not err.

However, Vega-Torres argues that the permissible duration of the stop is controlled by *Rodriguez* and that the stop extension was unconstitutional because it went beyond the time that determining his citizenship reasonably would have been completed had Agent Gonzalez asked a specific question about seeing Vega-Torres's face. We recently rejected a similar argument in *United States v. Tello*, 924 F.3d 782, 789 (5th Cir. 2019) (rejecting defendant's argument that *Rodriguez* foreclosed the length-based approach in *Machuca-Barrera*). "*Rodriguez* does not dictate a script that agents must follow." *Id.*

Accordingly, we do not find any error in the district court's finding that the length of the stop was reasonable, and that Agent Gonzalez did not impermissibly extend the stop.

No. 18-40441

B.

Vega-Torres next argues that the evidence from the search should have been suppressed because his consent to search was preceded by a constitutional violation, and the consent was not sufficiently attenuated from that violation. Because there was no unconstitutional detention, *see* Section III.A., we need not reach the issue of consent. *See Tello*, 924 F.3d at 789 (citing *United States v. Brigham*, 382 F.3d 500, 512 (5th Cir. 2004) (en banc) ("Absent a Fourth Amendment violation, [the defendant's] consent to search the vehicle was not unconstitutionally tainted.")).

IV.

For the foregoing reasons, the district court's judgment is AFFIRMED.