# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2024

Lyle W. Cayce
Clerk

No. 23-40366

United States of America,

*Plaintiff—Appellee*,

*versus*

Buzzy Martinez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CR-509-1

Before Dennis, Southwick, and Ho, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

Defendant-Appellant Buzzy Martinez was arrested and charged with transporting undocumented aliens hidden in his tractor-trailer after a U.S. Border Patrol (USBP) canine alerted to the vehicle. Martinez sought to suppress evidence gathered from his vehicle, arguing the canine's alerts could not provide his handler the necessary reasonable suspicion to extend the stop of his vehicle and probable cause to search it because dogs are unable to reliably differentiate between the scents of a vehicle's driver and concealed humans within the vehicle. The district court denied Martinez's motion to

No. 23-40366

suppress, Martinez pleaded guilty, and he now appeals the suppression ruling. We AFFIRM.

## I.

On July 23, 2022, Martinez arrived at the USBP checkpoint in Falfurrias, Texas, driving a tractor-trailer. Working at the checkpoint that day were USBP Agent Steven Compton, a canine handler, and his canine, "Bak."

Agent Compton has been a USBP canine handler for seven years and has handled three different canines, including Bak. To become a canine handler, he trained at the USBP Canine Academy for seven weeks, where he learned how to properly care for and train a canine in how to detect contraband. He passed a written examination at the end of this training. Agent Compton has since passed certification—which tests the canine team in seventeen scenarios—with each of his three canines.

Bak is a canine trained and certified to detect concealed humans and controlled substances. Bak responds to contraband in two ways: (1) he may "alert," which refers to the canine's immediate response to stimulus, including respiratory and posture changes as well as more aggressive signals, after having identified something he has been trained to detect; and (2) he may "indicate," which is a more passive response the canine is trained to perform when the canine has found the source of what it has detected—which, in Bak's case, is sitting. After successfully indicating contraband, Bak is rewarded with a toy. Bak went through his initial training process with a different handler. After four successful certifications with that handler, Bak was paired with Agent Compton. Agent Compton then trained with Bak for fifteen days, and the team passed certification on July 21, 2022, two days before the events underlying this case.

On the day of the events in this case, as Martinez drove down the primary inspection lane toward the primary inspection point, Agent Compton and Bak walked alongside the vehicle conducting a "free air sniff." Bak immediately alerted to Martinez's tractor-trailer by pulling Agent Compton toward the vehicle. When Martinez's tractor-trailer stopped at the primary inspection area to answer immigration questions from the primary inspection agent, Bak again alerted by jumping and hitting his paws against the rear cab area of the tractor. Bak then indicated by sitting down next to the rear of the cab. Bak did this process two more times, jumping against the rear of the cab, then sitting.

Agent Compton, recognizing Bak's alerts and indications, instructed the questioning agent to refer Martinez and his tractor-trailer to the secondary inspection area. Once at secondary, agents asked Martinez to step out of the vehicle and, after he did so, asked whether anyone else was inside, to which Martinez replied there was no one else. Agent Compton and Bak then approached for a secondary sniff of the vehicle to confirm Bak was not alerting to Martinez. Bak again alerted to the cab by jumping against the door. Bak then hesitated, but he did not fully sit down, i.e., indicate. Agent Compton opened the driver's door, and Bak jumped into the vehicle and went straight to the rear of the cab. Agent Compton searched the cab and found ten individuals concealed in the sleeper area and closets, all of whom were determined to be undocumented immigrants.

Martinez was arrested and charged by indictment with three counts of transporting an undocumented alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (A)(v)(II), and (B)(ii). Martinez filed a motion to suppress all evidence resulting from the search of his tractor-trailer, arguing Agent Compton lacked reasonable suspicion to lengthen his stop and probable cause to search his tractor-trailer because Bak's alerts and indications were unreliable. Martinez's primary argument was that dogs like Bak are too short

to see into the driver's window of a tractor-trailer and, under these circumstances, a dog cannot reliably differentiate between the scents of the driver and any other concealed humans in the vehicle.

After a two-day suppression hearing, the district court issued a written order denying Martinez's motion to suppress. The court found that Agent Compton and Bak were adequately trained and certified to detect concealed humans, that the USBP training program is sound, and that dogs are capable of detecting concealed humans. Accordingly, the court found that Bak's alerts and indications were reliable. The court consequently found that Bak's alerts and indications at the initial inspection provided reasonable suspicion for Agent Compton to extend the stop for a second sniff, and Bak's alerts at the second inspection after Martinez was removed from the vehicle provided probable cause to search Martinez's tractor-trailer.

After the district court's ruling, Martinez agreed to plead guilty to one count of transporting an undocumented alien, pursuant to a conditional plea agreement preserving his right to appeal the suppression ruling. At sentencing, on June 13, 2023, the district court granted Martinez a downward variance and sentenced him to eighteen months in prison, to be followed by a term of supervised release of three years. Martinez timely appealed.

## II.

When reviewing a ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the prevailing party, here, the Government. *United States v. Zavala*, 541 F.3d 562, 573–74 (5th Cir. 2008) (citing *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007)). The determination that there was reasonable suspicion or probable cause is a legal conclusion reviewed *de novo*. *See id.* (citing *Ibarra*, 493 F.3d at 530). The reliability of a canine's alert is a factual finding reviewed for clear error. *United States v.*

*Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003); *United States v. Gonzales*, 79 F.3d 413, 418 n.11 (5th Cir. 1996). "A factual finding that is plausible based on the record as a whole is not clearly erroneous." *United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015) (citing *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013)). "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quoting *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)). In the absence of a warrant, the burden of proof is on the Government to justify the search. *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) (citing *Manuel v. United States*, 355 F.2d 344 (5th Cir. 1966)). This court may affirm on any basis established by the record. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (citing *United States v. Ibarra–Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999)).

## III.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). "Ordinarily, a search or seizure is unreasonable 'in the absence of individualized suspicion of wrongdoing.'" *United States v. Tello*, 924 F.3d 782, 786 (5th Cir. 2019) (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000)). However, as a "narrow exception to the general requirements of reasonable suspicion and probable cause," the Supreme Court has held that border agents at immigration checkpoints may "stop travelers without suspicion for questioning about immigration status." *United States v. Machuca-Barrera*, 261 F.3d 425, 431 (5th Cir. 2001) (citing *United States v. Martinez–Fuerte*, 428 U.S. 543 (1976)).

Like any traffic stop, "the tolerable duration" of a stop at an immigration checkpoint "is determined by the seizure's 'mission,'" and the stop "may 'last no longer than is necessary to effectuate th[at] purpose.'" *See United States v. Rodriguez*, 575 U.S. 348, 354 (2015) (second alteration in original) (first quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); and then quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality op.)). At a border checkpoint, the permissible duration is "the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention." *Machuca-Barrera*, 261 F.3d at 433. To extend a stop beyond the time necessary to investigate normal immigration matters, the border agent must develop "reasonable suspicion of other criminal activity," and "[f]or extended detentions or for searches," the agent must have "consent or probable cause." *Id.* at 434 (citing *Martinez-Fuente*, 428 U.S. at 567). "[A] border patrol agent may refer a car to secondary [inspection] for any reason (or no reason at all)," but "the length of the detention is still limited by the immigration-related justification for the stop." *Id.* at 434 n.29 (citing *United States v. Jackson*, 825 F.2d 853, 862 (5th Cir. 1987)). A canine sniff of the outside of a vehicle is not a search, *United States v. Dovali-Avilia*, 895 F.2d 206 (5th Cir. 1990) (citing *United States v. Lovell*, 849 F.2d 910, 913 (5th Cir. 1988)), and accordingly during the time necessary to investigate normal immigration matters, border agents may conduct a canine sniff to search for drugs or concealed aliens so long as "conducting the sniff does not prolong the purpose of the stop," *Tello*, 924 F.3d at 787 (first citing *United States v. Ventura*, 447 F.3d 375, 378 (5th Cir. 2006); and then citing *Rodriguez*, 575 U.S. at 357).

An agent has probable cause to search when, considering the totality of the circumstances, "the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is

present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). Probable cause requires only "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* at 244, 249 (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[W]e do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Id.* at 249 (citing *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

"'Reasonable suspicion is a low threshold' and requires only 'some minimal level of objective justification.'" *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020) (quoting *United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015)). "Reasonable suspicion demands something more than a 'mere hunch' but 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Id.* (cleaned up) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)).

When a dog that is "trained to alert . . . [to] contraband or people" does so "alert[] in the near presence of a particular vehicle, that action is sufficient to give rise to probable cause to search that vehicle." *Dovali-Avila*, 895 F.2d at 207. "A defendant, however, must have an opportunity to challenge . . . a dog's reliability." *Harris*, 568 U.S. at 247.

The Supreme Court addressed how courts should evaluate a dog's reliability in *Florida v. Harris*, 568 U.S. at 243–48. "The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 248. The Court emphasized a dog's performance in "controlled testing environments" over "[f]ield data." *Id.* at 246. "[E]vidence of a dog's satisfactory performance in a certification or training

program can itself provide sufficient reason to trust his alert." *Id.* "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* at 246–47. However, a defendant "may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty," and may "examine how the dog (or handler) performed in the assessments made in those settings." *Id.* at 247. Furthermore, "evidence of the dog's (or handler's) history in the field, . . . may sometimes be relevant," and "even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id.*

On appeal, Martinez renews his attack on the adequacy of Bak's training. He argues a dog cannot be reliably trained to differentiate between the scents of the driver and other concealed humans in a vehicle. Accordingly, he argues Bak's alerts and indications did not provide Agent Compton reasonable suspicion to extend his stop and probable cause to search his tractor-trailer. That argument fails for two reasons.

First, by focusing on a dog's ability to detect concealed humans, Martinez improperly parses the situation in hindsight, rather than examining it through the totality of Agent Compton's experience in the moment. The record shows that Bak is trained and certified to detect both concealed humans and controlled substances. When Bak alerted to Martinez's tractor-trailer, a reasonable person could have thought Bak was detecting either concealed humans or controlled substances. Of course, Bak actually found concealed humans, but "we do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Id.* at 249 (citing *Di Re*, 332 U.S. at 595). Martinez does not challenge Bak's ability to detect

controlled substances, a skill he is certified in. "If the [Government] has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause." *Id.* at 248. Because Bak is trained and certified to detect controlled substances, which Martinez does not contest, his alert provided Agent Compton reasonable suspicion to investigate for and probable cause to search for controlled substances. *See Powell*, 732 F.3d at 369 (stating this court may affirm on any basis established by the record); *cf. Outlaw*, 319 F.3d at 704 (holding that the alert of a dog that was reliably certified to detect marijuana, cocaine, heroin, and methamphetamine provided reasonable suspicion, even though the briefcase the dog alerted to actually contained phencyclidine, known as PCP, which the dog was not trained to detect); *United States v. Viera*, 644 F.2d 509, 511–12 (5th Cir. Unit B May 1981) (holding that the alerts of dogs that were trained to detect heroin, cocaine, hashish, marijuana, and related drugs provided probable cause, even though the briefcases the dogs alerted to actually contained quaaludes, which the dogs were not trained to detect).

Second, even evaluating Bak's ability to detect concealed humans, the district court's finding that Bak was reliable in this regard is not clearly erroneous. The district court found Martinez's argument that dogs cannot differentiate between the scents of different concealed humans to be speculative and noted the ability of rescue dogs to find people buried under rubble and to work around the obvious or other people engaged in the search and rescue operation. The court also noted Bak can go weeks without an alert, controverting Martinez's argument that Bak is alerting to the smell of the drivers or responding to cues. The court examined the standards of USBP's training program and noted USBP has been training canines to detect concealed humans for nearly forty years with reliable results in testing. Both Bak and Agent Compton are trained and certified through USBP's program

No. 23-40366

and have continued to receive above-average scores on their bi-weekly trainings. Because the court's conclusion that Bak was reliable is "plausible in light of the record as a whole," it is not clearly erroneous. *See Ochoa-Gomez*, 777 F.3d at 282.

Based on this finding, the district court correctly held Bak's alerts and indications at the primary inspection point provided Agent Compton reasonable suspicion to extend the stop and investigate for concealed humans. *See Machua-Barrera*, 261 F.3d at 434. Further, the district court also correctly held that, at the secondary inspection point, after Martinez exited the vehicle[1] and stated no one else was inside, Bak's continued alerts to the cab area of Martinez's tractor-trailer provided probable cause to search the cab for concealed humans. *See Harris*, 568 U.S. at 248; *Dovali-Avila*, 895 F.2d at 207; *Machua-Barrera*, 261 F.3d at 434.

## IV.

The judgment of the district court is AFFIRMED.

---

[1] It is well established that, once a vehicle has been lawfully stopped, officers may order the driver out of the vehicle without violating the Fourth Amendment due to concerns for officer safety. *See, e.g.*, *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *United States v. Meredith*, 480 F.3d 366, 369 (5th Cir. 2007). That objective justification remains, "subjective thoughts notwithstanding," i.e., even if the officer has different subjective intentions for ordering the driver out of the vehicle, such as, here, to conduct a secondary sniff. *See Ohio v. Robinette*, 519 U.S. 33, 38 (1996).